IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2019

**STATE OF TENNESSEE v. ADARION C. MORRIS**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2016-C-1500, 2016-C-1501, 2016-C-2181     Angelita Blackshear Dalton, Judge**

---

**No. M2018-02034-CCA-R3-CD**

---

The defendant, Adarion C. Morris, appeals the 48-year sentence imposed following the revocation of his community corrections placement, arguing that the trial court was without jurisdiction to impose the new sentence and that the sentence is excessive. Discerning no error, we affirm the revocation of the defendant's community corrections placement and the sentences imposed following the resentencing.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Lonnie Maze III, Nolensville, Tennessee, for the appellant, Adarion C. Morris.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Samantha Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In case number 2016-C-1500, the Davidson County Grand Jury charged the defendant with one count of the possession with intent to sell or deliver .5 grams or more of cocaine and one count of the simple possession or casual exchange of marijuana. In case number 2016-C-1501, the same grand jury charged the defendant with two counts of aggravated assault, one count of felony evading arrest, and one count of second or subsequent offense of driving on a revoked license. In case number 2016-C-2181, the defendant was charged with one count of aggravated assault. On April 27, 2018, the defendant pleaded guilty as charged in case numbers 2016-C-1501 and 2016-C-2181 and count two of case number 2016-C-1500. He also pleaded guilty to the lesser included offense of the attempted possession with intent to sell or deliver .5 grams or more of

cocaine in count one of case number 2016-C-1500. Pursuant to a plea agreement with the State, the defendant received a total effective sentence of six years to be served in a community corrections placement in exchange for his pleas of guilty.

Less than two months later, on June 20, 2018, a community corrections violation warrant issued alleging that the defendant had violated the terms of his community corrections placement by failing to report. An amended violation warrant issued on July 25, 2018, alleging that the defendant had violated the terms of his community corrections placement by garnering new charges of vandalism, assault, and aggravated assault. A second amended violation warrant issued on August 1, 2018, alleging that the defendant violated the terms of his community corrections placement by garnering yet another charge of aggravated assault.

At the October 17, 2018 hearing, Davidson County Community Corrections case officer Lisa Baden testified that the defendant began reporting in April 2018 and stopped reporting on June 5, 2018. Ms. Baden later learned that the defendant had been arrested on charges of vandalism, assault, and aggravated assault with a deadly weapon.

Metropolitan Nashville Police Department Detective Gary Shannon testified that he investigated three separate incidents in which the defendant was suspected of the aggravated assault of three different victims. He explained,

> One of the incidents was here in Davidson County [on July 18, 2018,] at 3203 Lagrange Drive. . . . There was a couple of people, Tina Yarbrough and Antoinisha Shepherd were inside of that residence when they heard gunfire outside. The house was hit multiple times. As a matter of fact, we collected nine shell casings from that location outside.
>
> A witness that was in the house in a different bedroom that was not hit, Ms. Irving, she ran outside, and she could see [the defendant] running away from the residence. And then, he got into a dark colored vehicle. She could see something in his hand. She couldn't make out what it was. And she knew that [the defendant] had just been in a bad breakup with Shaniqua Shepard.

Antoinisha Shepard was apparently the daughter of the defendant and Shaniqua Shepard.

Another incident occurred on July 10, 2018, at 144 Hodge Court. On that occasion, Thomas McKissick

-2-

was outside, he heard gunshots. He could see the flashes from the gunshots, and he could hear the bullets striking around him. . . . . He could see . . . what he thought was [the defendant], shooting at him. We collected seven shell casings from that residence as well. And shortly after that incident, Shaniqua Shepard received a call from [the defendant], and he had told her that he had just shot at her uncle, Mr. McKissick.

The other incident occurred on July 11, 2018, at 917 14th Avenue North. On that occasion, "Lamonte Ayers was outside of his residence and he heard approximately two gunshots, one bullet struck near the ground near him. He didn't see a shooter and we weren't able to recover any shell casings on that incident." Shortly after the shooting, however, the defendant "called Shaniqua Shepard . . . and said that he had just shot at her cousin on 14th Avenue North."

Detective Shannon testified that charges related to each of the three incidents had been bound over to the Davidson County Grand Jury following a lengthy preliminary hearing. The State exhibited the recording of that preliminary hearing to Detective Shannon's testimony.

During cross-examination, Detective Shannon testified that, although he was not involved in the investigation, he was aware of a July 10, 2018 incident during which the defendant choked Shaniqua Shepard and pointed a gun at her. He said that the charges stemming from that incident had also been bound over to the grand jury following the same preliminary hearing. Detective Shannon acknowledged that neither Ms. Irving nor Mr. McKissick was completely sure in their identification of the defendant as the shooter. Detective Shannon said that he did not interview the defendant and that the defendant had not provided any statement following his arrest.

During redirect examination, Detective Shannon testified that forensic testing had matched the shell casings collected during the investigation to a 9mm handgun recovered during the defendant's arrest.

Following this testimony, the State rested, and the defendant elected to present no proof. The State asked the trial court to revoke the defendant's community corrections placement and to exercise its discretion to resentence the defendant. To this end, the State exhibited to the hearing a resentencing report. The State asked the trial court to increase the individual sentences and to order consecutive service of the sentences. The defendant admitted "that he has violated his community corrections.

-3-

That's obvious." Nevertheless, he asked the court not to increase the sentence and instead order the existing six-year sentence into service. The trial court took the case under advisement.

In a written order, the trial court found by a preponderance of the evidence that the defendant had violated the terms of his community corrections placement "[b]ased on proof presented regarding the events that are alleged to have occurred on July 10, 11 and 18, 2018," as well as the defendant's failure to report. The court also concluded that resentencing rather than execution of the original agreed sentence was warranted under the circumstances of this case.[1]

The court determined that, based upon his criminal record, the defendant was a Range II offender. The court applied enhancement factors (1), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range, and (8), that the defendant previously failed to comply with a sentence involving release into the community, to all of the defendant's convictions. *See* T.C.A. § 40-35-114(1), (8). The court applied factors (3), that the offenses involved more than one victim, and (19), that the victim of the aggravated assault was a law enforcement officer, to the defendant's convictions in case number 2016-C-1501. *See id.* § 40-35-114(3), (19). The court applied enhancement factors (10), that the defendant had no hesitation about committing a crime when the risk to human life was high, and (12), that the offenses involved the threat of death or serious bodily injury, to the defendant's convictions in case numbers 2016-C-1501 and 2016-C-2181. *See id.* § 40-35-114(10), (12). The court noted that it was "extremely disturbed by the [d]efendant's history of criminal behavior, including convictions for domestic violence related and other violent offenses, especially considering that one of the instant cases involved a domestic violence related offense." The court observed that the charges that resulted in the revocation of the defendant's community corrections sentence were "based on the allegations of seriously violent offenses . . . including additional allegations of domestic violence committed in the presence of children, and the use of a handgun against the family of the [d]efendant's former girlfriend." The court expressed "great trepidation about the [d]efendant's total disregard for authority and his lack of an appreciation for his accountability for his actions and the impact of his criminal behavior on others." Based upon these findings, the trial court imposed a sentence of 10 years' incarceration for each of the defendant's three convictions of aggravated assault, a sentence of 10 years' incarceration for the defendant's conviction of attempted possession of cocaine, and a sentence of eight years' incarceration for the defendant's conviction of felony evading arrest.

---

[1] The defendant received sentences of "time served" for his convictions of simple possession and driving on a revoked license. Consequently, those counts are not at issue in this case.

The trial court also ordered that the all of the sentences be served consecutively, for a total effective sentence of 48 years' incarceration. Relative to sentence alignment, the court found that the defendant had an extensive record of criminal activity and that he qualified as a dangerous offender. *See id.* § 40-35-115(b)(2), (4). The court also concluded "that consecutive sentencing is appropriate and necessary to protect the public against further criminal conduct by the [d]efendant and relates to the severity of the offenses committed."

The court determined that confinement was necessary to protect society from further criminal conduct by the defendant and to avoid depreciating the seriousness of the offenses. *See id.* § 40-35-103(A), (B). Finally, the court found that measures less restrictive than confinement had frequently and recently been applied unsuccessfully to the defendant. *See id.* § 40-35-103(C).

In this timely appeal, the defendant does not challenge the revocation of his community corrections placement but asserts that the trial court erred by electing to resentence him instead of ordering execution of the original six-year agreed sentence. Specifically, he contends that, because he was statutorily ineligible for community corrections in the first place, the trial court lacked the authority to resentence him under the terms of Code section 40-36-106. He also argues that, assuming that the trial court had the authority to resentence him, the new sentence is excessive given that he had not yet been convicted of the new offenses that led to the revocation of his community corrections placement.

*Propriety of Original Sentence*

The defendant first asserts that, because he was statutorily ineligible for community corrections placement for his convictions of aggravated assault, the trial court was without the authority to resentence him following the revocation of that placement. He claims that the court was only authorized to order service of the original sentence.

As a general rule, "[i]ssues raised for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996). As the State correctly points out, the defendant did not challenge the legality of the original six-year community corrections placement prior to or at the revocation and resentencing hearing. Additionally, although "a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final," *State v. Brown*, 479 S.W.3d 200, 206 (Tenn. 2015) (quoting *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)), the original six-year community corrections placement was not, as the defendant contends, an illegal sentence. An illegal sentence is one "that is not authorized by the

-5-

applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1; *see also State v. Wooden*, 478 S.W.3d 585, 594-95 (Tenn. 2015). The defendant is correct that he was not eligible for community corrections placement for his aggravated assault convictions under the terms of Code section 40-36-106(a), which excludes from eligibility those felony offenders convicted of offenses "*involving crimes against the person as provided in title 39, chapter 13, parts 1-5*." T.C.A. § 40-36-106(a)(1)(B) (emphasis added). Code section 40-36-106(c), however, provides an exception to that general exclusion:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

*Id.* § 40-36-106(c). Because a community corrections placement was among the statutorily available sentences, the defendant cannot establish that his original six-year community corrections sentence was illegal.

*Propriety of Resentencing*

As indicated, the defendant does not challenge the factual basis supporting the revocation of his community corrections placement but argues that the sentence imposed by the trial court following his resentencing is excessive. He asserts that the trial court failed to "consider the fact that" he had not yet been convicted of any new offenses at the time of the resentencing hearing. He also claims that the trial court should have considered in mitigation the fact that "Ms. Shepard had first denied being abused . . . and did not call the police until almost three weeks after the alleged incident."

Importantly, the preponderance of the evidence adduced at the revocation hearing established that the defendant committed the offenses that led to the revocation of his community corrections placement. Consequently, the trial court did not err by revoking the community corrections placement. *See* T.C.A. § 40-35-311(e)(1) ("If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ."); *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991) ("Given the similar nature of a community corrections sentence and a sentence of probation, we hold that the same principles are applicable in deciding whether a community corrections sentence

revocation was proper.").

Code section 40-36-106 provides that, following the revocation of a community corrections placement, a trial court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed," provided that "[t]he resentencing [is] conducted in compliance with § 40-35-210." T.C.A. § 40-36-106(d)(4). "The purpose of this statute is to permit a trial court to impose a new sentence if the nature, circumstances, and frequency of the accused's violations warrant a different type of alternative sentence or incarceration." *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). "A sentence imposed pursuant to this statute may exceed the length of the sentence initially imposed by the trial court," *id.*, and may include the consecutive alignment of sentences that were originally aligned concurrently, *see State v. Samuels*, 44 S.W.3d 489, 496 (Tenn. 2001).

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

In *State v. Wilkerson*, the supreme court held that the trial court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct before utilizing the "dangerous offender" category to impose consecutive sentencing, *see State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995), and "[t]he adoption of the abuse of discretion standard with the presumption of reasonableness has not eliminated this requirement," *Pollard*, 432 S.W.3d at 863.

In this case, the trial court conducted a resentencing hearing, and its

resentencing order complied with the terms of Code section 40-35-210. The trial court considered the enhancement and mitigating factors when imposing the new sentences, and, although the court arguably misapplied some of the enhancement factors, the remaining factors supported the length of the individual sentences. The record also supports the trial court's conclusion that consecutive sentences were warranted based upon the defendant's extensive criminal record and his status as a dangerous offender. The court, noting the level of violence involved in the conviction offenses as well as the defendant's pattern of violent behavior in his prior convictions and in the offenses that led to the revocation of his community corrections placement, made the necessary findings under *Wilkerson*. The resentencing report indicates that the defendant had prior convictions of voluntary manslaughter, aggravated assault, attempted aggravated assault, assault (two counts), and violating an order of protection (two counts). The preponderance of the evidence established that, less than two months after being granted a community corrections placement, the defendant not only possessed a deadly weapon but used it to terrorize his ex-girlfriend and members of her family. In our view, "the nature, circumstances, and frequency of" the defendant's violent behavior warranted the new sentence imposed by the trial court. *See Ervin*, 939 S.W.2d at 583.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-8-